**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Federal Trade Commission,<br><br>    Plaintiff,<br><br>v.<br><br>HCG Diet Direct, LLC; Clint Ethington,<br><br>    Defendants. | No. CV-14-00015-PHX-NVW<br><br>**ORDER** |

Before the Court is Plaintiff's Motion to Lift Suspension of Judgment (Doc. 7), Defendants' Request for Evidentiary Hearing and Discovery (Doc. 14), and the parties' accompanying briefs. For the reasons that follow, the Motion to Lift Suspension of Judgment will be granted and the Request for Evidentiary Hearing and Discovery will be denied.

**I.   BACKGROUND**

In 2011, the Federal Trade Commission ("FTC") issued a warning letter to Clint Ethington and his company HCG Diet Direct, LLC ("HCG Diet") for false advertising and related charges.[1] Negotiations ensued. In 2013, Ethington submitted personal and corporate financial statements to the FTC. In reliance on those statements, the FTC

---

[1] Hereafter, Ethington and HCG Diet will be collectively referred to as "Ethington" when the difference is unimportant.

agreed to settle by way of a Stipulated Judgment (Doc. 5) entered by the Court on January 7, 2014.

The Stipulated Judgment provided injunctive and monetary relief. The injunction was immediate, but the money was conditional. A judgment of approximately $3.2 million against Ethington was entered but "suspended." (*Id.* at 11.) The suspension was "expressly premised on the truthfulness, accuracy, and completeness" of Ethington's 2013 financial statements. (*Id.*) The suspension was to be "lifted" if, upon the FTC's motion, the Court were to find that Ethington "failed to disclose any material asset, materially misstated the value of any asset, or made any other material misstatement or omission" in his statements. (*Id.* at 12.)

On September 15, 2015, the FTC moved (Doc. 7) to lift the suspension based on the following misrepresentations and omissions in Ethington's 2013 financial statements:

(1) Ethington reported income of approximately $8,500/month from his company Ethington Management, Inc., but in fact the income was at least $13,500/month.

(2) Ethington claimed that the companies he partially owned ("the Related Companies") had no financial assets, but in fact those companies had between $65,000 and $150,000 in cash.

(3) Ethington did not mention that the Related Companies paid more than $200,000 to its owners in 2013, or that one of those companies paid $120,000 toward various credit cards the day before Ethington's financial statement.

(4) Ethington presented HCG Diet as a company on the verge of shutting down, but the company then opened a new merchant account, and one of the Related Companies, Prescription HCG, received income from a merchant account in early 2013.

That Ethington made these misrepresentations and omissions is undisputed. (*See* Doc. 22

- 2 -

at 2-3; *accord* Doc. 14 at 5-17.)

Ethington contends these inaccuracies were not "material" and therefore do not trigger the suspension-lifting clause in the Stipulated Judgment. He claims the inaccuracies were unintentional and, in any event, would not have mattered to the FTC because even an accurate description of his finances would have shown he was unable to pay a monetary judgment. Accordingly, Ethington asks (Doc. 14) that the Court deny the FTC's motion outright, or at least allow limited discovery and an evidentiary hearing on the matter.

## II. ANALYSIS

At issue is whether the inaccuracies in Ethington's 2013 financial statements were material. A misrepresentation is "material," as defined by the parties, if "a reasonable person would attach importance to its existence or nonexistence in determining his or her choice of action in the transaction in question." (Doc. 14 at 18; Doc. 20 at 6 & n.4.) *See Caruthers v. Underhill*, 230 Ariz. 513, 521, 287 P.3d 807, 815 (Ct. App. 2012). Thus, materiality is context-dependent. One must understand the "transaction in question" to determine how a reasonable person participating in the transaction would view a misrepresentation made in the course of the transaction.

Here, the transaction in question was a settlement of substantial legal claims. The FTC had accused Ethington and his company of causing $3.2 million of consumer injury due to false advertising and related offenses. Rather than prosecuting these claims and seeking monetary redress, the FTC agreed to a Stipulated Judgment in which the only immediate relief was injunctive. This choice not to pursue monetary relief was, according to the terms of the Stipulated Judgment, "expressly premised on the truthfulness, accuracy, and completeness" of Ethington's 2013 financial statements. (Doc. 5 at 11.) In other words, the FTC's choice in this transaction was based on its perception of Ethington's financial condition.

- 3 -

Given this context, a reasonable person in the FTC's shoes would have attached importance to inaccuracies relating to Ethington's finances. A reasonable litigant would have wanted to know, for example, that Ethington's monthly income was approximately $5,000 higher than he said it was, that the Related Companies had at least $65,000 more in financial assets than he said they did, and that those companies had recently paid hundreds of thousands of dollars to their owners. Such knowledge would have produced a perception of Ethington's financial condition markedly different from the perception the FTC had when choosing to settle. Thus, the inaccuracies were material.

This finding of materiality is appropriate even in the absence of discovery and an evidentiary hearing. Although Ethington requests these procedures, he cites no rule requiring them. And although Ethington offers several reasons for these procedures, none is persuasive.

First, Ethington requests discovery and a hearing in the hopes of revealing that even if the FTC had known of the inaccuracies in his financial statements, it would have made the same choice not to seek monetary relief against him. But this revelation would prove nothing. The question is not whether the FTC would have acted differently knowing the inaccuracies, but whether a reasonable person would have attached importance to the inaccuracies. The distinction matters. Imagine a prospective homebuyer discovers hidden roof damage on the eve of purchase. He might still decide to buy the house even though he (reasonably) attaches importance to the roof damage. His ultimate decision would not render the roof damage immaterial. Similarly, if the FTC had known of Ethington's financial inaccuracies, it might still have decided not to seek monetary relief even though it would have (reasonably) attached importance to the inaccuracies. Its ultimate decision would not render the inaccuracies immaterial. All this is simply to say that a factor can be material to a decision without being dispositive. Therefore Ethington's hope to show that his financial inaccuracies were not dispositive to the FTC's decision does not justify imposing extra procedures.

Ethington also requests a hearing to show that the inaccuracies in his financial statements were unintentional. But Ethington's intent is irrelevant. Materiality and intent are separate concepts, as confirmed by a recitation of the basic elements of fraud. The suspension-lifting clause in the Stipulated Judgment is triggered by "material" misrepresentations or omissions, not "intentional" misrepresentations or omissions. Had the parties wanted to insert an exception for unintentional material misrepresentations or omissions, they could have done so. They did not. Therefore Ethington's hope to show lack of intent does not justify imposing extra procedures.

Finally, Ethington requests a hearing to further demonstrate that he was unable to pay a monetary judgment, even after adjusting for the inaccuracies in his financial statements. But the only significance of Ethington's inability to pay is to show that the FTC would have acted the same way—i.e., would have decided not to seek monetary relief—had it known of his true financial state. As explained above, such a showing would prove nothing about materiality. Furthermore, Ethington has so far offered little indication that he was truly unable to pay *any* monetary judgment. Ethington derives his "inability" to pay from the fact that his liabilities exceeded his assets. But a negative net worth does not mean Ethington could not have paid the FTC. It only means Ethington could not have paid the FTC *and* all his other creditors *while* maintaining his then-existing lifestyle. The FTC might reasonably have expected Ethington to pay a judgment before paying other creditors, especially given that one of the companies he partially owned paid $120,000 toward credit cards the day before his financial statement to the FTC. Therefore Ethington's hope to show an inability to pay a monetary judgment does not justify imposing extra procedures.

### III. CONCLUSION

Because a reasonable person in the FTC's shoes would have attached importance to the inaccuracies in Ethington's 2013 financial statements, these inaccuracies were

material.  The discovery and hearing requested by Ethington would not alter this conclusion.  Instead these procedures would drag out this litigation beyond the full round of briefing and oral argument already conducted.

As a result, the suspension of the monetary portion of the Stipulated Judgment will be lifted.  Although this result may seem harsh, it is a result the parties appear to have anticipated when settling the allegations of false advertising and related offenses.

IT IS THEREFORE ORDERED that Plaintiff's Motion to Lift Suspension of Judgment (Doc. 7) is granted.

IT IS FURTHER ORDERED that Defendants' Request for Evidentiary Hearing and Discovery (Doc. 14) is denied.

IT IS FURTHER ORDERED that, pursuant to the terms of the Stipulated Judgment (Doc. 5 at 11-12), the previously entered judgment in favor of the FTC and against Defendants in the amount of $3,212,310, plus interest, is now due and may be executed on.

Dated this 18th day of February, 2016.

Neil V. Wake
United States District Judge